UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JAMES M. SHARP,                        )
                                       )
            Plaintiff,                 )
                                       )        CAUSE NO. 3:20-CV-327-JD-MGG
v.                                     )
                                       )
                                       )
DAVID LIEBEL,                          )
                                       )
            Defendant.                 )

<u>OPINION AND ORDER</u>

James M. Sharp, a prisoner without a lawyer, brought this lawsuit alleging that

David Liebel, the Director of Religious Services for the Indiana Department of

Correction (IDOC), violated Sharp's constitutional and statutory rights by denying him

a kosher diet consistent with his Islamic faith. Sharp was granted leave to proceed on

two claims: (1) an official capacity claim for injunctive relief under the Religious Land

Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a); and (2) an

individual capacity claim for compensatory and punitive damages under the Free

Exercise Clause of the First Amendment. ECF 7 at 4-5. Currently before the Court are

the parties' cross-motions for summary judgment. Sharp filed his motion for summary

judgment and a memorandum of law in support on February 2, 2021, as well as a

second memorandum of law in support on April 13, 2021. *See* ECF 37, 37-2, 47. Director

Liebel filed a cross-motion for summary judgment, and combined memorandum of law

in support and response in opposition to Sharp's summary judgment motion, on May

17, 2021. *See* ECF 60, 61. Sharp filed a response to Director Liebel's motion for summary judgment on June 30, 2021. *See* ECF 68. Director Liebel filed a reply brief on July 14, 2021, while Sharp filed a reply brief on August 12, 2021. *See* ECF 69, 72.

## MOTION TO STRIKE

The Court first must address Director Liebel's motion to strike Sharp's August 12, 2021 reply brief. *See* ECF 73. Director Liebel argues that Sharp's reply brief is an improper surreply by characterizing Sharp's June 30, 2021 response to Director Liebel's cross-motion for summary judgment as a combined response and reply. *Id.* ¶ 3. In fact, however, Sharp's June 30, 2021 response brief was titled and filed only as a response brief. *See* ECF 68. While Director Liebel refers to the "typical four-brief schedule for [ ] original motion[s] and cross-motion[s]," *id.* ¶ 5, he cites no local rule or scheduling order provision requiring Sharp to file a combined response/reply. The two cross-motions are mirror images raising overlapping legal arguments. But the absence of an explicit direction in any rule or court order requiring Sharp to file a combined response/reply brief leads to the conclusion that Sharp had the right to file a separate reply brief in support of his motion for summary judgment.

Nevertheless, Sharp's reply brief is untimely, having been filed more than two months after the initial deadline had passed,[1] and three weeks after the extended

---

[1] The unextended deadline for Sharp to file a reply brief was June 1, 2021. *See* N.D. Ind. L.R. 56-1(c)(1) (summary judgment reply briefs due 14 days after response filed); ECF 60 (defendant's combined summary judgment motion/response filed May 17, 2021); Fed. R. Civ. P. 6(a)(1)(C) (extending deadline that falls on a national holiday by one day).

deadline set forth in the Court's June 17, 2021 order.[2] Certain factors, however, weigh in favor of considering Sharp's belated reply brief. To begin with, Sharp's reply is the only summary judgment filing to raise a potentially valid factual question concerning one of the issues on summary judgment by pointing out that Sharp's parole was recently revoked. *See* ECF 72 at 2.[3] While the Court was aware of these developments already,[4] there is still another reason for considering Sharp's belated reply. The arguments made by Director Liebel in his reply brief, while not new, are sufficiently distinct from his arguments in his opening brief that the Court would benefit from consideration of Sharp's late-filed reply brief with its more sharply focused response to the arguments made in Director Liebel's reply. For instance, Director Liebel makes no mention in his reply brief of the substantial burden argument he focused on in his opening brief, which was also the focus of Sharp's response to that brief. In addition, Director Liebel's reply brief expands on his argument regarding the issue of lack of sincerity. He previously only raised a qualified immunity argument on that issue. Although his reply brief does not

---

[2] The Court's June 17, 2021 order granted Sharp an extension until July 23, 2021 to file a response to Director Liebel's motion for summary judgment. ECF 67. But the order does not mention any simultaneously filed or combined filing of a reply brief in support of Sharp's own motion for summary judgment.

[3] As will be discussed later in this opinion, Sharp's parole revocation and current incarceration with the IDOC goes to the validity of Director Liebel's mootness argument regarding Sharp's RLUIPA claim.

[4] Sharp filed a motion on June 14, 2021 asking for a stay of proceedings (ECF 65), which alerted the Court to his incarceration at the Vanderburgh County Detention Center pending a hearing to revoke his bail. The Court learned about Sharp's subsequent return to IDOC custody from the notice Sharp filed on July 21, 2021 updating his current address. *See* ECF 70.

ask outright for a merits ruling in his favor based on lack of sincerity (which would be a new argument improperly raised for the first time in a reply), it does suggest that the Court reach that result.[5] As a result of these considerations and in the interests of justice the Court will exercise its discretion to consider Sharp's belated reply brief.

## BACKGROUND

The facts material to the parties' cross-motions for summary judgment are undisputed unless otherwise noted. Sharp served time in IDOC custody under a prior conviction, which he completed in January 2009. When Sharp left IDOC custody in January 2009, his religious preference on record with the IDOC was Muslim. *See* ECF 71, Liebel Declaration ¶ 12.[6] After returning to IDOC custody in January 2018, Sharp changed his religious preference from Muslim to General Christian. *Id.* ¶ 13. He subsequently changed his religious preference to Muslim on March 20, 2018, to General Christian on October 19, 2018, and to Muslim on April 3, 2019. *Id.* ¶¶ 14-15.[7]

---

[5] *See* ECF 69 at 2 ("In light of Plaintiff's complete apathy toward the religious dictates that he professes to be bound by, it simply cannot be said that he sincerely believes his religion mandates a kosher diet.").

[6] Director Liebel filed his declaration in support of his motion for summary judgment with page three (out of five) missing. *See* ECF 60-1. He later filed the declaration again, but this time it is missing page four. *See* ECF 71. Between the two filings, the record contains a complete version of the declaration so there is no need for it to be filed a third time.

[7] These changes are purportedly reflected in the computer printout of Sharp's Religious Preference History attached to Director Liebel's declaration. *See* ECF 60-2. Sharp has not disputed the declaration's factual representations about his designated religious history and therefore they are taken as true for purposes of the present summary judgment motions.

The Indiana Department of Correction (IDOC) offers three meal options to offenders whose sincere religious beliefs require special diets: vegan (no animal products), lacto-ovo vegetarian (may contain eggs and/or dairy products), and traditional kosher (one that has been certified as such by rabbinic or other recognized Jewish authority and that complies with traditional Jewish requirements concerning food preparation and foods that are allowed to be eaten). *Id.* ¶¶ 8, 10. On or about February 21, 2019, Sharp submitted a State Form 56144, Application for Religious Diet – Kosher, in which he requested that he be provided with a kosher diet in accordance with his religious beliefs. ECF 60-3. While Sharp's official religious designation at that time was "General Christian," he stated that he intended to change that designation to Muslim "when policy allows me to in April," and that he had "been practicing for quite a while, at least a few months." *Id.* at 2. In the space provided for specifying the foods and/or preparation methods he believed were required or prohibited to satisfy his sincere religious beliefs and why, Sharp wrote:

> The Quran speaks thoroughly about foods prohibited for Muslims to eat. Surah 5. The Spread Table states in Verse 3 that forbidden to us is Carrion, blood, and swine, what is slaughtered in the name of any other God, but Allah. What is killed by any other means except by what Allah has approved. This Committee cannot prove that the food served in DOC was killed or has been used according to this, or by any other means.

*Id.*

State Form 56144 includes a notice to applicants that "[t]he IDOC may review your commissary, Fresh Favorite and other purchases for the sixty (60) day period prior

to the date you submit your application," and "may draw an adverse inference concerning the sincerity of your religious beliefs if you have purchased a significant amount of commissary items that are not designated as kosher on the commissary lists." *Id.* at 1. On or about March 11, 2019, Director Liebel denied Sharp's Application for Religious Diet with the following explanation: "You failed to provide information showing how your religious practice requires a kosher diet. Also, purchase of non-kosher commissary, including purchase of cheese nibbles on 2/28/2019." ECF 37-1 at 11; *see also* ECF 60-4.

Sharp submitted a grievance contesting the denial of his religious diet application in which he explained that he applied for a kosher diet because he was a Muslim and that "kosher" to him meant "purity in the eyes of God." ECF 37-1 at 6. Sharp pointed out that, although the cheese nibbles he purchased from the commissary were not marked "K" for kosher, Director Liebel ignored other commissary items he had purchased that were kosher. *Id*. at 5. He explained that he was attempting to buy mostly kosher items but his kosher choices at the commissary were "limited" and did not include a cheese nibbles option. *Id*. He argued that cheese was not against the kosher diet, and that, even though the cheese nibbles were not "blessed by a Jewish priest" as being kosher, that did not automatically mean they were processed in a manner that violated his Islamic faith. *Id*. at 5-6. Sharp's grievance and grievance appeal were denied on March 16, 2019 and April 22, 2019 respectively for the reasons previously given by Director Liebel. ECF 37-1 at 9.

Sharp did not give up. On November 16, 2019, he submitted a State Form 56094, Application for Religious Diet, for applicants seeking either a lacto ovo vegetarian or vegan diet with the option for selecting "other religious diet." ECF 60-5 at 1-2. Sharp indicated on this application that his designated religion was Islam/Muslim, and wrote that he sought a religious diet that was other than a lacto ovo vegetarian or vegan, providing the following explanation:

> I am Muslim and there is no diet for me throughout the Department of Corrections for me being Muslim. There is no Halal diet in the Department of Correction that contains Halal meat. So I am asking to be placed on a kosher diet that contains meat until the Department of Corrections comes up with a Halal diet that contains meat. I am not vegan or vegetarian. Also per Roman Jones v. Indiana Department of Corrections No. 17-2836 Seventh Circuit Court of Appeals decided February 15, 2019, I am entitled to this diet.

*Id.* at 2. Shortly thereafter, on December 28, 2019, Sharp submitted a second State Form 56144, Application for Religious Diet - Kosher, in which he wrote a similar explanation for why he was seeking a kosher diet. *See id.* at 3-4.

On February 25, 2020, Director Liebel denied Sharp's renewed requests for a religious diet with the following explanation: "Purchase of non-kosher commissary including ramen, Velveeta cheese, and sausage on 2/2/2020, and bagel, sausage, and cheese cup on 2/16/2020." ECF 60-6 at 1.[8]

---

[8] Director Liebel has submitted what appears to be a computer screenshot indicating that Sharp's application(s) was/were denied on February 25, 2020. Sharp, on the other hand, submits a letter from Director Liebel denying his applications, but the letter, for some reason, is dated September 22, 2020. *See* ECF 37-1 at 3. The date discrepancy does not appear to matter here.

On March 16, 2020, Sharp submitted a second grievance regarding the denial of his request for a kosher diet, in which he argued that (1) he applied for a kosher diet based on his Islamic beliefs; (2) while a kosher meal would satisfy his Islamic religious practices, his commissary purchases should be judged according to his Islamic beliefs, not Jewish beliefs regarding kosher foods; and (3) it was improper to deny his request for a kosher diet based on the fact that he ordered non-kosher items such as "meat, cheese, breads, etc." because those items are allowed on a halal diet. ECF 37-1 at 1. Sharp's second grievance was denied on March 19, 2020 with the following explanation:

> Offenders who apply for a kosher diet need to follow the [kosher] guidelines set forth in policy. This includes what is ordered from commissary. While your religious practices may determine you can eat items not allowed on kosher, offenders will need to follow the kosher guidelines.

ECF 37-1 at 4.

Following the denial of his second grievance, on April 21, 2020, Sharp filed the present lawsuit.

## STANDARD OF REVIEW

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v.*

*Moore*, 351 F.3d 278, 282 (7th Cir. 2003). Summary judgment is not appropriate if the court must choose between competing inferences or weigh the credibility of witnesses, since these are functions of a jury. *Abdullahi v. City of Madison*, 423 F.3d 763, 770 (7th Cir. 2005); *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 627 (7th Cir. 2006). However, summary judgment "is the put up or shut up moment in a lawsuit." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). This means that a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in his own pleading, but rather must "marshal and present the court with the evidence [he] contends will prove [his] case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice," *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009), and a nonmoving party's pro se status does not alleviate this burden, *Arnett v. Webster*, 658 F.3d 742, 760 (7th Cir. 2011).

## DISCUSSION

A claim under either the RLUIPA or the First Amendment begins with proof of a sincere religious belief. *See United States v. Seeger*, 380 U.S. 163, 185 (1965) (stating that sincerity of belief is a "threshold question . . . which must be resolved in every case"). Once the plaintiff meets his threshold burden of showing a sincere religious belief, he must demonstrate that the state placed a substantial burden on his religious practices. *See Jones v. Carter*, 915 F.3d 1147 (7th Cir. 2019) (RLUIPA claim); *Neely-Bey Tarik-El v. Conley*, 912 F.3d 989, 1003 (7th Cir. 2019) (Free Exercise claim); *see also Koger v. Bryan*, 523 F.3d 789, 802 (7th Cir. 2008) (finding that the defendants were not entitled to qualified

immunity for RLUIPA claim because "the prohibition against substantially burdening sincerely held religious beliefs [had already been] well-established in Free Exercise Clause cases"). If the plaintiff demonstrates a substantial burden, the state actor can avoid liability under the RLUIPA by showing that the challenged restriction "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Jones*, 915 F.3d at 1148–49 (quoting 42 U.S.C. § 2000cc-1). Under the Free Exercise Clause of the First Amendment, the state actor must show that the restriction at issue is "reasonably related to legitimate penological objectives, which include safety, security, and economic concerns." *Turner v. Safley*, 482 U.S. 78, 89-91 (1987).

The parties make no arguments about the balancing test for either Sharp's RLUIPA claim or Free Exercise claim. Instead, the parties' summary judgment motions focus on the requirement of a sincere religious belief and the substantial burden test. Before discussing those issues, however, the Court first addresses Director Liebel's mootness argument concerning Sharp's RLUIPA claim.

A.    *Mootness Argument as to RLUIPA claim*

Director Liebel argues that Sharp's claim for injunctive relief under the RLUIPA is moot because Sharp was released from IDOC custody on April 26, 2021. *See* ECF 61 at 2, 6-7; ECF 69 at 1; ECF 71 ¶ 26. "The correct standard for mootness" is that "no reasonable expectation exists that the alleged wrong will be repeated." *Lucini Italia Co. v. Grappolini*, 288 F.3d 1035, 1038 (7th Cir. 2002). The record reflects that, although Sharp was released on parole on April 26, 2021, ECF 49, he was in the custody of the

Vanderburgh County Sheriff as of June 14, 2021 in anticipation of a parole revocation hearing, ECF 65, 66. He was back in IDOC custody by at least July 21, 2021. *See* ECF 70.

From the fact that he has not withdrawn his mootness argument, the Court assumes Director Liebel's view is that Sharp's return to IDOC custody has no relevance to the validity of his mootness argument. But since Director Liebel is silent on the matter, the Court does not know the legal reasoning behind that apparent position. *See Packer v. Trs. of Ind. Univ. Sch. of Med.*, 800 F.3d 843, 849 (7th Cir. 2015) (holding that undeveloped factual and legal arguments are waived).  The Court finds that, while intervening circumstances, i.e., Sharp's parole, suggested that his RLUIPA claim would become moot, those circumstances did not come to fruition as his parole was revoked and he was returned to IDOC custody. Moreover, Director Liebel has responsibility for deciding the requests for a special prison diet by all inmates within the prison system. Accordingly, Sharp's RLUIPA claim is not rendered moot by the fact that he is not currently incarcerated at the same correctional facility where he was incarcerated when he filed this lawsuit.[9] For these reasons, the Court concludes that Sharp's RLUIPA claim is not moot.

B.     *Threshold Requirement of a Sincere Religious Belief*

It is well established that prison officials may examine the sincerity of a prisoner's religious belief before providing him a religious diet. *See Cutter v. Wilkinson*,

---

[9] *See Andreola v. Wisconsin*, 171 F. App'x 514, 515 (7th Cir. 2006) (holding that a prisoner's claim for injunctive relief after he was allegedly denied "ultra Orthodox" kosher food when housed at another prison was "not moot because [the senior personnel in the State of Wisconsin's Department of Corrections] can control his diet throughout the state's prison system").

544 U.S. 709, 725 n.13 (2005) ("prison officials may appropriately question whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic"). As the Seventh Circuit explained, "[a] prison is entitled to ensure that a given claim reflects a sincere religious belief, rather than . . . a prisoner's desire to make a pest of himself and cause trouble for his captors." *Vinning-El v. Evans*, 657 F.3d 591, 594 (7th Cir. 2011).

Sharp asserts that he adheres to the same Islamic beliefs as the plaintiff in the *Jones* case. The *Jones* plaintiff's Islamic beliefs "forbid the consumption of certain foods and require that others be prepared in accordance with Islamic law—that is, his food must be halal." 915 F.3d at 1148. Director Liebel explains in more detail that the Holy Text of Islam -- the Qur'an -- dictates that Muslims can eat only certain foods. The food items that are permitted by the Qur'an are referred to as halal, which means lawful or permissible. Foods which are not considered halal are deemed haram, or forbidden. Certain foods, such as pork and alcohol, are always haram, while others, such as meat from cows, veal, lamb, sheep, goats, chickens, and ducks are deemed halal only if they are slaughtered in the manner proscribed by the Qur'an. ECF 71 ¶¶ 4-6. "Since there is an overlap in halal and Jewish kosher requirements," the *Jones* plaintiff agreed that the IDOC's kosher diet available to those of the Jewish faith would be an acceptable alternative to a purely halal diet so long as it included either kosher or halal meat. *Jones*, 915 F.3d at 1148. Sharp takes the same position here.

Director Liebel argues that Sharp's religious beliefs are insincere based on his commissary purchase history, which reflects numerous food items that, according to

Director Liebel, are not halal. ECF 60-1 ¶¶ 20-23. [10] "Evidence of nonobservance is relevant on the question of sincerity, and is especially important in the prison setting, for an inmate may adopt a religion merely to harass the prison staff with demands to accommodate his new faith." *Reed v. Faulkner*, 842 F.2d 960, 963 (7th Cir. 1988). Sharp's commissary purchase history reveals that, from April 3, 2019 (the date when Sharp changed his religious preference from General Christian back to Muslim) until November 29, 2020 (eight months after he filed this lawsuit), Sharp placed thirty-one food orders from commissary. *See* ECF 60-7 at 7-38. Of those orders, twenty-eight included foods items that Director Liebel identifies as being non-halal. Those orders included 1,074 individual food items of which 652 are identified by Director Liebel as being non-halal. More than 60 percent of the food Sharp bought from commissary in this time period is identified by Director Liebel as being non-halal. Most of those purchases were Ramen Noodles. Director Liebel contends that the seasoning packet contained in both standard and flavored varieties of Ramen Noodles are made from

---

[10] Director Liebel also cites as evidence of Sharp's lack of sincerity a July 23, 2020 email sent by Sharp to a family member requesting money so that he could purchase "fresh favorite" items from the commissary such as hamburgers, hot dogs, and chicken sandwiches. *See* ECF 60-8. The Court does not place much weight on the email, however, because it refers to generic food items such as "hamburgers, hot dogs, and chicken sandwiches" that would be allowed by Sharp's religious beliefs if none contain pork and are prepared properly. Director Liebel contends in his declaration that the mentioned items contain meat that has not been slaughtered according to Islamic or Jewish law. ECF 60-1 ¶ 24. But the email mentions only generic categories of foods, not specific items from the commissary. Even assuming that all commissary food items that could possibly fall into the generic categories mentioned in the email contained non-halal compliant meat, there is no evidence that Sharp knew that was the case when he wrote about those generic food categories. Thus, it makes sense to focus on the food items Sharp actually purchased from the commissary rather than to speculate about future hypothetical purchases his email suggested he might make.

animal extracts which are not certified as halal. Sharp also purchased Hot N Spicy Beef Sausage, which Director Liebel states is not made with beef or other animal products that have been slaughtered in accordance with Islamic and/or Jewish law. And Sharp purchased Velveeta Sharp Cheddar Squeeze, which Director Liebel states contains rennet, an ingredient that comes from animals that have not been slaughtered in accordance with Islamic and/or Jewish law. Ramen Noodles, meat products, and cheese products certified as halal are available for sale through the commissary, but Sharp did not purchase those products. *See generally* ECF 60-1 at ¶¶ 21-23.

Sharp argues that Director Liebel "has no right to judge" his religious sincerity from his conduct, i.e., "spending habits," because Director Liebel "doesn't know the [his] heart[,] only Allah does." ECF 72 at 4. That argument is incorrect, as "courts have consistently held that prison officials can evaluate evidence of food purchases that are inconsistent with a professed religious belief" and may use that information to assist in evaluating the sincerity of an inmate's religious beliefs before providing an inmate with a religious diet. *Smith v. Tamayo*, No. 19-00537 BLF (PR), 2020 WL 4584229, at *14 (N.D. Cal. Aug. 10, 2020) (citing *Curry v. California Dep't of Corr.*, 2013 WL 75769, at *7 (N.D. Cal. June 4, 2013) (evidence of plaintiff's snack food consumption could be considered to evaluate the sincerity of his religious beliefs), *aff'd sub nom. Curry v. California Dep't of Corr. & Rehab.*, 616 F. App'x 265 (9th Cir. 2015) (affirming grant of summary judgment on plaintiff's RLUIPA and free exercise claim); *Lute v. Jonson*, 2012 WL 913749, *7 (D. Idaho 2012) (finding that the plaintiff's "[p]urchasing [of] nonkosher foods—both before

and after his kosher diet request—[was] completely inconsistent with [his] professed religious belief")).

Sharp also argues he was justified in purchasing the food items in question because items marked as halal or kosher are too expensive for him to purchase. He cites to the *Jones* holding that "when the state forces a prisoner to give away his last dime" by requiring him to purchase his own halal meat at the commissary, "it is imposing a substantial burden" on that inmate's religious practices. 915 F.3d at 1150. This argument, however, "puts the cart before the horse," *Daly v. Davis*, No. 08-2046, 2009 WL 773880, at *2 (7th Cir. Mar. 25, 2009): the IDOC may not substantially burden Sharp's religious beliefs *only if* those beliefs are sincere. *Jones* does not support Sharp on the question of sincerity because there, unlike here, the IDOC conceded that the plaintiff's religious beliefs were sincere. *See Jones,* 915 F.3d at 1149. Sharp takes the language in *Jones* about forcing a prisoner to spend his last dime at the commissary out of context. In *Jones*, the IDOC was *requiring* the plaintiff to purchase commissary food items to satisfy his sincerely held religious beliefs. Here, Director Liebel is not saying that Sharp must purchase anything; only that if he does, he must purchase food items consistent with his religious beliefs.

Sharp's last argument is his strongest. He argues that even if some of his commissary purchases were non-halal, they do not prove that his religious beliefs are insincere, but rather show "he is continuously trying to meet the requirement to the best of his ability." ECF 72 at 3. The Seventh Circuit has "repeat[edly] [ ] warn[ed] . . . that a sincere religious believer doesn't forfeit his religious rights merely because he is not

scrupulous in his observance; for where would religion be without its backsliders, penitents, and prodigal sons." *Grayson v. Schuler,* 666 F.3d 450, 454 (7th Cir. 2012). Thus, Sharp's failure to adhere perfectly to his sincere religious beliefs may be "evidence of insincerity," but is not "conclusive evidence of insincerity" such that the factual issue of lack of sincerity can be resolved in Director Liebel's favor as a matter of law. *See Reed,* 842 F.2d at 963 (explaining that "the fact that a person does not adhere steadfastly to every tenet of his faith does not mark him as insincere," and observing that "[i]t would be bizarre for prisons to undertake in effect to promote strict orthodoxy, by forfeiting the religious rights of any inmate observed backsliding, thus placing guards and fellow inmates in the role of religious police").

Sharp's assertion that he was trying to adhere to the strictures of his faith is not wholly without record support. First, there is his testimony to that effect. Second, his commissary history report shows that, between February 21, 2019 and May 2, 2019, he purchased seventy-four food items that all appear to be halal compliant (at least none are identified by Director Liebel as being otherwise). Nineteen of those seventy-four food items are marked with a "K," a designation that appears to support Sharp's assertion in his objections to his grievance denial that he was trying to purchase kosher food items. ECF 60-7 at 1-6. Sharp may argue he was attempting to comply with the dietary restrictions but for various reasons (which he explains in his grievances and summary judgment filings) was less than perfect at it. It would then be up to the factfinder to decide whether Sharp's commissary purchase history "suggest[ed] that his intent to adhere to Islamic law or a halal diet is somehow insincere," or whether it

instead "demonstrate[s] carelessness at best, and spiritual weakness at worst." *Caruso v. Zenon*, No. 95-MK-1578 (BNB), 2005 WL 5957978, at *11 (D. Colo. July 25, 2005) (rejecting insincerity defense even though it was undisputed that the plaintiff had "purchased haram foods from the canteen on some 30 occasions over a three-year period").

Furthermore, while the record does not support Sharp's contention that the less expensive non-halal food items he purchased from the commissary are not "a direct violation of his religious preferences," ECF 72 at 3,[11] if he truly yet mistakenly believed that to be the case then that too may be taken into consideration by the factfinder in assessing the sincerity of his beliefs. *See Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989) ("It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, *or the validity of particular litigants' interpretations of those creeds*") (emphasis added); *see also Colvin v. Caruso*, 605 F.3d 282, 298 (6th Cir. 2010) ("the touchstone for determining whether a religious belief is entitled to free-exercise protection is an assessment of 'whether the beliefs professed ... are sincerely held,' not whether 'the belief is accurate or logical'" (quoting *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999) (citations and internal quotation marks omitted).

---

[11] Sharp claims that even though the IDOC does not consider his commissary purchases to be halal, that does not mean they are not. ECF 72 at 3. His conclusory assertion that the food items in question complied with Islamic law, without further explanation, is insufficient to raise a factual dispute concerning Director Liebel's declaration testimony that the identified food items do not comply with the tenets of Islam.

Additionally, Sharp refers albeit somewhat vaguely to a possible change in IDOC policy effective August 6, 2021 regarding commissary items that previously were not considered kosher/halal by the IDOC but going forward would be. ECF 72 at 5. He asserts that this policy change means that he "has been following the kosher/halal diet requirements since the very beginning." *Id.* Although he has not presented evidence to support this latter statement, the record does suggest some sort of policy change did take place regarding the IDOC's consideration of whether certain cheese products were kosher.[12] The fact that the IDOC may change its designation for a food item as either being kosher or non-kosher suggests there is room for debate on that question. And if that is the case, then it is difficult to see why Director Liebel's identification of food items as being non-halal would be definitive proof of Sharp's lack of sincerity without consideration of Sharp's testimony about his genuine belief that some or all of the items he purchased from the commissary identified by Director Liebel as being non-halal were permissible under his sincerely held religious beliefs. For all of these reasons, Sharp's sincerity is a disputed factual one, *see Seeger*, 380 U.S. at 185, on which summary judgment in either party's favor would not be appropriate. *See, e.g., Zapata v Ducart*, No. 17-cv-255 2019 WL 2476685, at * (N.D. Cal. June 13, 2019) (citing cases where "courts

---

[12] Director Liebel's denial of Sharp's first application for a religious diet cited to Sharp's purchase of "non-kosher" cheese nibbles as a reason for the denial. But Director Liebel's denial of Sharp's later religious diet applications did not mention cheese nibbles as being among Sharp's non-kosher commissary purchase. Nor does Director Liebel identify any of Sharp's commissary purchases of cheese nibbles on the commissary history report attached to his declaration as being among the non-halal items Sharp purchased, even though he relied on those purchases in his initial decision denying Sharp's request for a religious diet.

have determined that the sincerity of a prisoner's religious belief is a question of fact for the jury and that it is inappropriate for a court to grant summary judgment on a First Amendment or RLUIPA claim based on a plaintiff's alleged lack of sincerity.[13]

C.   _Substantial Burden Test_

Sharp argues he is entitled to summary judgment on his RLUIPA and First Amendment Free Exercise claims because _Jones_ established that when the IDOC refuses to provide an inmate holding sincere Islamic beliefs with a kosher diet that includes halal meat, it has placed a substantial burden on that inmate's religious practices. _Jones_, 915 F.3d at 1150. Director Liebel, on the other hand, argues that he is entitled to summary judgment because the undisputed fact that Sharp "continued to eat non-kosher and non-halal food off of commissary both before and after his application for a kosher diet were denied" proves that the denial of a kosher diet did not impose a substantial burden on his religious practices. ECF 61 at 8.

---

[13] _See also Monson v. Steward_, No. 2:15-CV-00513-PK, 2017 WL 2882709, at *9–10 (D. Or. July 6, 2017) (same); _Curry v. Cal. Dep't of Corr._, No. C-09-3408 EMC PR, 2013 WL 75769, at *7 (N.D. Cal. Jan. 4, 2013) ("Although Curry's purchases of many foods inconsistent with the Kemetic diet likely would make a strong impact on a jury, it cannot be said as a matter of law that his canteen activities show that his religious beliefs were insincere."), _aff'd_, 616 F. App'x 265 (9th Cir. 2015); _Johnson v. Nev. Bd. of Prison Comm'rs,_ 2013 WL 5428423, at *2-3 (D. Nev. Sept. 26, 2013) (although defendants produced evidence that plaintiff's beliefs were not sincerely held, the question "must ultimately be resolved by the trier of fact"); _White_, 2013 WL 4496364, at *5 ("'backsliding' or non-observance of a religious practice is not sufficient to establish as a matter of law that [plaintiff] is insincere in his religious beliefs"); _Monts v. Arpaio_, 2012 WL 160246, at *3 (D. Ariz. Jan. 19, 2012) (although plaintiff presented a "weak" case for the sincerity of his religious belief, it still presented a question of fact); _Bonnell v. Burnett_, No. 07-CV-15444, 2009 WL 909575, at *3 (E.D. Mich. Mar. 31, 2009) (same).

If Sharp establishes that his need for a kosher diet is a sincerely held religious belief, denial of the diet is a substantial burden to his religious practices. *Jones*, 915 F.3d at 1148-50. Director Liebel's attempt to counter that presumption with an argument regarding Sharp's non-kosher commissary purchases is without merit. Consistent with *Jones*, Director Liebel's evidence of non-kosher commissary purchase is insufficient to establish the absence of a substantial burden as a matter of law. Director Liebel's argument otherwise is simply a recapitulation of his attack on Sharp's sincerity.

Director Liebel also argues that Sharp's religious practices were not substantially burdened because he has "not provide[d] any evidence as to why the vegan diet offered by IDOC would substantially burden his [First Amendment] rights." ECF 61 at 8. It is difficult to understand this argument, however, given that there is no evidence Director Liebel "offered" Sharp a vegan diet in response to his request for a religious diet. More importantly, Sharp explained in his State Form 56094, Application for Religious Diet, that he is not a vegan or vegetarian, and that, as a Muslim, he desired a kosher diet with halal meat, per the *Jones* decision. *See* ECF 60-5 at 1-2. As the Seventh Circuit explained in *Jones*, "[w]hile many Jewish and Muslim inmates would find a nutritionally adequate vegetarian diet that otherwise satisfies kosher standards to be fully compatible with their beliefs, . . . Jones and the other members of his sect within Islam believe that the holy Qur'an plainly commands him to 'eat what is on earth, Lawful and good' — including meat." 915 F.3d at 1148. The record shows that Sharp adequately explained how a vegan diet imposed a substantial burden on his religious practices.

D.   *Qualified Immunity*

Finally, Director Liebel argues that he is entitled to qualified immunity on Sharp's damages claims under the First Amendment because he reasonably concluded that Sharp's religious beliefs were not sincere. *See* ECF 61 at 8-10; ECF 69 at 1-2. The doctrine of qualified immunity protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). Thus, if Director Liebel "thought [Sharp] was insincere -- in other words, thought that he wanted a [kosher] diet for a non-religious reason—then [Director Liebel] would be entitled to immunity, even if a judge or jury disagrees with [Director Liebel's] conclusion, so long as [his] error was 'reasonable.'" *Vinning-El*, 657 F.3d at 594; *see also Grayson*, 666 F.3d at 455 ("the defendant is entitled to immunity if he committed a reasonable error in failing to apply clearly established law—that is, if he reasonably thought the plaintiff insincere in his religious belief"). Although the question of sincerity is factual, the qualified immunity question of reasonableness is one of law for the court to decide. *Vinning-El*, 657 F.3d at 595. But where the "qualified immunity decision depends upon and cannot be separated from" factual disputes, "which are [also] integral to the merits of [the plaintiff's] claim," summary judgment on qualified immunity grounds is inappropriate. *Smith v. Finkley*, No. 20-1754, 2021 WL 3660880, at *1 (7th Cir. Aug. 18, 2021).

21

Director Liebel states in his declaration that he doubted the sincerity of Sharp's religious beliefs because of Sharp's "inability to articulate clearly the reason he required a kosher diet, as well as his consistent ordering of non-Kosher and non-Halal food items." ECF 71 ¶ 25.[14] The first reason was not reasonable as it is not supported by the record. Sharp's applications clearly articulated that his request for a religious diet was based on his Islamic faith and that the religious diet he required was the same as the plaintiff in *Jones*, i.e., a kosher diet with meat. Insofar as the second reason is concerned, Director Liebel does not address the Seventh Circuit's emphatic support in *Reed* and *Grayson* of the principle that less-than-perfect compliance with the tenants of one's religious faith does not render that faith insincere. Nor does he indicate that he ever went beyond looking at Sharp's commissary purchases to consider Sharp's explanations for them in assessing whether Sharp's less-than-perfect compliance with the tenants of his professed religious faith exemplified by those purchases was proof of insincerity or merely proof of carelessness or spiritual weakness. As the Seventh Circuit has explained, the qualified immunity inquiry requires the judge to determine whether the defendant "reasonably attempted to determine whether [the inmate] has a sincere belief that his religion requires a [religious] diet"; "put slightly differently, the judge needs to know whether [the defendant] used the tenets of [the inmate's asserted religion] to disqualify [him], or only as a reason to suspect that [he] may have been seeking a

---

[14] Director Liebel refers in his summary judgment fact statement to Sharp's multiple changes to his official religious designation. But the Court notes he does not purport to have relied on those changes in reaching his conclusion that Sharp's religious beliefs were not sincere.

[religious] diet for personal rather than religious reasons." *Vinning-El*, 657 F.3d at 595. Director Liebel has not convinced the Court that, as a factual matter, he did anything other than use the tenets of Islam to disqualify Sharp. Nor has he presented legal argument sufficient to convince the Court that the law is unsettled regarding whether it was reasonable for him to evaluate an inmate's sincerity solely by reference to the inmate's commissary purchases judged against the tenets of the inmate's professed faith—essentially applying a litmus test for sincerity using those tenets.

In addition to the inadequacy of the briefing on the issue, the Court also considers the fact that "qualified immunity protects the defendants only against claims for damages; it does not protect the defendants against claims for injunctive relief." *Neely-Bey Tarik-El,* 912 F.3d at 1008. Thus, it makes sense to defer a ruling on qualified immunity at this time given that, even if Sharp's damages claim under the First Amendment were to be dismissed on summary judgment, his injunctive relief claim under the RLUIPA would remain. Because the case will continue against Director Liebel in his official capacity in any event, "at least it is better to wait and allow a more complete record to be compiled before attempting to decide whether the defendants can be held liable in damages." *Hunafa v. Murphy*, 907 F.2d 46, 48 (7th Cir. 1990).

For the foregoing reasons, the Court:

(1) DENIES Director Liebel's Motion to Strike, ECF 73;

(2) DENIES Plaintiff James M. Sharp's Motion for Summary Judgment, ECF 37; and

(3) DENIES Defendant David Liebel's Motion for Summary Judgment, ECF 60.

SO ORDERED on September 13, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT